**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| WAL-MART STORES, INC., WAL-MART STORES TEXAS, LLC, SAM'S EAST, INC., and QUALITY LICENSING CORP.<br><br>  Plaintiffs,<br>  v.<br><br>TEXAS ALCOHOLIC BEVERAGE COMMISSION; JOSÉ CUEVAS, JR. in his official capacity as Presiding Officer of the Texas Alcoholic Beverage Commission; STEVEN M. WEINBERG, in his official capacity as Commissioner of the Texas Alcoholic Beverage Commission; IDA CLEMENT STEEN, in her official capacity as Commissioner of the Texas Alcoholic Beverage Commission,<br><br>  Defendants. | Civil Action No. 1:15-cv-00134 |

## ORIGINAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

This is a civil action challenging the constitutionality of certain Texas statutes under the United States Constitution. Plaintiffs Wal-Mart Stores, Inc., and three of its subsidiaries, (collectively referred to as "Wal-Mart"), by and through their undersigned counsel, allege as follows:

## INTRODUCTION

1. <u>Public Corporation Ban</u>. Wal-Mart, a publicly traded corporation, is the largest retailer of wine and beer in Texas. Each of its "Walmart" and "Sam's Club" stores that sell wine and beer do so only after first obtaining a permit from the Texas Alcoholic Beverage Commission. Wal-Mart would like to also sell distilled spirits at its Walmart and Sam's Club locations in Texas for off-premises consumption. However, it is forbidden from doing so

because Texas law irrationally forbids any publicly traded corporation from owning or holding the permit needed to do that, i.e., a "package store permit."  Wal-Mart is therefore irrationally banned from competing with privately owned companies that are, unlike publicly traded corporations, allowed to obtain package store permits.  Worse, Texas law irrationally excludes publicly traded hotel corporations from the prohibition against publicly traded corporations, and any publicly traded hotel with a hotel store may sell distilled spirits and hold package store permits irrespective of the public corporation ban.

2.     Five-Store Limit and Its Loopholes.  Even if publicly traded corporations were allowed to sell distilled spirits to retail customers, Wal-Mart is forbidden from owning or holding more than five package store permits because Texas law irrationally prohibits companies and persons from owning or holding more than five packages store permits.  Texas law then unfairly grants an exception to the five-store limit to certain close family members.  The exception available to close family members is known as "consolidation" and is restricted to persons related within the first degree of consanguinity.  Close family members are thus allowed to pool their package store permits into a single entity and collectively obtain an unlimited number of package store permits.  In the case of consolidation involving a corporation, the close family member must own 51% or more of the corporation stock.  Wal-Mart, like many publicly traded corporations, has no persons related within the first degree of consanguinity who own 51% or more of the corporation's stock, and no mother, father, sister, brother or daughter to take advantage of the five-store limit loophole.  Therefore, even if Wal-Mart were allowed to obtain package store permits, it is irrationally prohibited from owning or holding more than five package store permits and competing with privately owned companies and individuals who, simply because they have close family members, are allowed to obtain an unlimited number of

package store permits.  In addition, the five package store limit does not apply to any person or corporation operating a hotel.  Thus, any hotel may hold an unlimited number of package store permits irrespective of the five-store limit and irrespective of the close family member consolidation loophole.

3.    <u>Restriction of Package Store Interests</u>.  Wal-Mart currently holds 543 "wine and beer retailer's off-premise" permits (i.e., "BQ permits") that allow it to sell wine and beer at Walmart and Sam's Club locations.  Wal-Mart would like to continue to sell wine and beer under its BQ permits, and also sell distilled spirits at more than five of its Walmart and Sam's Club locations in Texas for off-premises consumption.  However, even if publicly traded corporations were allowed to sell distilled spirits to retail customers, and regardless of the five-store limit and its loopholes, Wal-Mart is required to abandon all 543 of its BQ permits before it can own or hold even a single package store permit because Texas law irrationally prohibits owning or holding a BQ permit while simultaneously owning or holding a package store permit.  Therefore, even if Wal-Mart were allowed to obtain package store permits, and regardless of the five-store limit, Wal-Mart  is irrationally and unnecessarily required to abandon all of its wine and beer BQ permits before it can obtain even a single package store permit.

4.    <u>Anti-Competitive, Unfair, Unconstitutional Laws</u>.  In addition to being anti-competitive and unfair to consumers, the laws described above are protectionist provisions that unlawfully discriminate against publicly traded companies and interstate commerce, and are unconstitutional under the Equal Protection Clause, Commerce Clause, and Comity Clause of the U.S. Constitution.

3555425v1/014505

## PARTIES

5.      Plaintiff Wal-Mart Stores, Inc. is a Delaware corporation that is publicly traded on the New York Stock Exchange, with its headquarters in Bentonville, Arkansas. Wal-Mart Stores, Inc. owns and operates Walmart stores, Walmart Neighborhood Markets, Walmart Supercenters, and Sam's Clubs in Texas.

6.      Plaintiff Wal-Mart Stores Texas, LLC is a Delaware limited liability company, and wholly-owned, indirect subsidiary of Wal-Mart Stores, Inc., with its headquarters in Bentonville, Arkansas. Wal-Mart Stores Texas, LLC is registered with the Texas Secretary of State to do business in Texas.

7.      Plaintiff Sam's East, Inc. is an Arkansas corporation and wholly-owned, indirect subsidiary of Wal-Mart Stores, Inc., with its headquarters in Bentonville, Arkansas.  Sam's East, Inc. is registered with the Texas Secretary of State to do business in Texas.

8.      Plaintiff Quality Licensing Corp. is a Texas corporation and wholly owned, indirect subsidiary of Wal-Mart Stores Texas, LLC.  Quality Licensing Corp. holds the TABC permits that authorize Wal-Mart to sell wine and beer at its various Walmart and Sam's Club locations in Texas.

9.      Defendant Texas Alcoholic Beverage Commission (the "Commission" or "TABC") is an agency of the State of Texas, and is the agency with an interest in the matters made the subject of this action.  The Commission's headquarters are located at 5806 Mesa Drive, Suite 380, Austin, Travis County, Texas 78731, where it may be served with citation by serving its Administrator, Sherry Cook.

3555425v1/014505

10.     Defendant José Cuevas, Jr., is the Presiding Officer of the Commission, and Defendants Steven M. Weinberg and Ida Clement Steen are the other Members of the Commission.  These defendants are sued in their official capacities only.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to the federal questions statute, 28 U.S.C. § 1331, because this is a civil action arising under the Constitution and laws of the United States.  Wal-Mart brings this suit under 42 U.S.C. § 1983, which provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  Therefore, this Court also has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3).  This Court may grant declaratory and related relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because the Commission has its headquarters in this District.

## FACTS

13.     <u>Wal-Mart's Alcoholic Beverage Operations in Texas</u>.  Wal-Mart helps people save money and live better by purchasing quality products at competitive prices in retail stores throughout Texas, the United States, and other parts of the world.  Each week, more than 245 million people shop at Wal-Mart's more than 11,000 stores in 27 different countries.  Wal-Mart is the largest private employer in the U.S. and in the state of Texas.

14.     Wal-Mart currently sells wine, beer, or both in 546 stores in Texas, including Walmart stores, Supercenters, Neighborhood Markets and Sam's Clubs.  The Texas Alcoholic Beverage Code (the "Code") requires Wal-Mart to hold and maintain a license or permit for each Wal-Mart store in order to sell wine, beer, or both at the store.  Pursuant to Code requirements,

Wal-Mart holds 543 "BQ" Wine and Beer Retailer's Off-Premise Permits to sell wine, beer, and malt liquors containing no more than 17 percent alcohol for off-premise consumption in closed containers. Wal-Mart also holds three "BF" Retail Dealer's Off-Premise Licenses to sell beer, and one "Q" Wine Only Package Store Permit to sell ale, wine, and vinous liquors for off-premise consumption in closed containers.

15.     In 25 other states, Wal-Mart is licensed to sell distilled spirits in addition to wine and beer.   As it does with its sale of wine and beer in Texas, and its sale of distilled spirits in other states, Wal-Mart would like to obtain permits and licenses from the TABC for the retail sale of distilled spirits in Texas.   It is unable to do so, however, because the Code and various TABC regulations prohibit Wal-Mart from obtaining the necessary permits.

### Texas's Ban on Public Corporation Ownership of Package Stores

16.     Chapter 22 of the Code regulates the issuance of a package store permit, which is the permit necessary to sell distilled spirits to retail customers for off-premises consumption.[1] Section 22.16 of the Code, however, prohibits any package store permit from being held by a "public corporation, or by any entity which is directly or indirectly owned or controlled, in whole or in part, by a public corporation, or by any entity which would hold the package store permit for the benefit of a public corporation."   This section defines public corporation as either (1) any corporation or other legal entity whose shares or other evidence of ownership are listed on a public stock exchange or (2) any corporation or other legal entity with more than 35 persons holding an ownership interest.   Wal-Mart is a public corporation under either criterion.

---

[1] Section 1.04(3) of the Code defines "distilled spirits" to mean "alcohol, spirits of wine, whiskey, rum, brandy, gin, or any liquor produced in whole or in part by the process of distillation."   Section 1.04(5) defines "liquor" to mean "any alcoholic beverage containing alcohol in excess of four percent by weight," and includes "alcohol, spirits of wine, whiskey, liquor, wine, brandy, gin, rum, ale, malt liquor, tequila, mescal, habanero, or barreteago."   A package store permit is the only permit available for the retail sale of each type of liquor, including distilled spirits.

17.     <u>Discrimination Against Wal-Mart and Other Public Corporations</u>. Section 5.31(b) of the Code mandates that the Commission "shall ensure fair competition within the alcoholic beverage industry," but Section 22.16 arbitrarily distinguishes between "private" corporations and "public" corporations by excluding public corporations from the distilled spirits market. Private corporations with less than 35 owners may hold package store permits and compete in the retail sale of spirits, but no publicly traded corporation may do so—with one exception. Section 22.16(d) excludes publicly traded hotel corporations from the publicly traded corporation ban.  That is, any publicly traded corporation or corporation with more than 35 shareholders may hold a package store permit, as long as the package store is located in a hotel; but public corporations with stores located anywhere else are prohibited from holding package store permits.

18.     These arbitrary and irrational distinctions create separate classes of retailers with no rational difference or purpose.  One class of retailers—public corporations—are denied an opportunity to compete in the distilled spirits market, while another class of retailers—private corporations and publicly traded hotel corporations—are allowed to compete without similar restriction.  No other state in the nation allows private corporations to engage in the retail sale of spirits but prohibits some but not all publicly traded companies from doing so.

19.     The Code's discrimination against public corporations in general, and Wal-Mart in particular, followed a federal court order invalidating as unconstitutional a prior prohibition against out-of-state companies holding any license or permit to sell alcoholic beverages at retail. In January 1994, the United States Court of Appeals for the Fifth Circuit issued its opinion and order in *Cooper v. McBeath*, 11 F.3d 547 (5th Cir. 1994), holding that certain sections of the Texas Alcoholic Beverage Code violated the Commerce Clause of the U.S. Constitution because

7

those sections required an applicant for any alcoholic beverage permit to be a Texas resident for at least one year.  The Fifth Circuit held that the prohibition on non-resident ownership of TABC permits discriminated against non-Texas residents, and that there was no legitimate governmental purpose for the requirement.

20.     The Fifth Circuit explained: "So long as an applicant meets the necessary qualifications and comports himself according to the governing standards, the State would be hard pressed to offer a justification substantial enough to authorize a wall prohibiting equal competition of non-Texans in the retail liquor business."  *Id.* at 554.  Accordingly, the Fifth Circuit affirmed the district court's judgment declaring the Texas-residency ownership requirement to be unconstitutional, and permanently enjoined the TABC from enforcing those provisions.

21.     In the Texas legislative session immediately following the Fifth Circuit's decision in *Cooper v. McBeath*, Texas Senator Kenneth Armbrister introduced Senate Bill 1063.  Senator Armbrister described the bill's purpose from the Senate floor: "[W]e are prohibiting public corporations—a package store permit may not be owned or held by a public corporation or any entity which is directly or indirectly controlled in whole or in part by a public corporation." [2]

22.     The Texas Package Store Association ("TPSA"), a lobbying organization of Texas package-store owners, was the principal supporter of the bill.  TPSA's lawyer, Fred Nieman, Jr., testified to the Texas Senate State Affairs Committee that "Texas has long had a requirement that package stores could not be owned except by Texas residents," but that requirement had been "struck down" by the courts on the grounds that it "penalized out-of-state

---

[2] Transcript of Texas Senate Floor Debate of SB 1063, March 28, 1995.

citizens."   According to Mr. Nieman, Senate Bill 1063 met the "need" that "still remains" to "have real live human beings who are easily identifiable who are close to the business." [3]

23.     When asked about "the section on ownership by public corporations," Senator Armbrister further explained the purpose of his bill: "You can't have a package store inside a Walmart.  In other words, Walmart can't own the package store and the Walmart at the same time."   The Senate floor debate and committee discussion make clear that the bill's sponsors sought to achieve indirectly what the Fifth Circuit had decreed they could not do directly: prohibit Wal-Mart, and other non-resident public corporations, from holding package store permits.

24.     Special Protections for Resident Corporations and Hotels.   To protect Texas corporations from the effect of the new prohibition, the Texas legislature created statutory exceptions to the public corporation ban.  Section 22.16(f) provides that the public corporation ban "shall not apply to a corporation which was a public corporation as defined by this section on April 28, 1995," and "holds a package store permit" or "has an application pending for a package store permit on April 28, 1995."   This exception is significant because only Texas resident corporations—public or private—could hold or apply for a TABC permit before the Fifth Circuit's 1994 decision in *Cooper v. McBeath*.  Therefore, Wal-Mart and other out-of-state residents did not qualify for the exception.

25.     Section 22.16(d) provides that the public corporation ban "shall not apply to a package store located in a hotel."   Thus, any publicly traded hotel corporation may hold a package store permit, but Wal-Mart—another type of publicly traded corporation—may not hold a package store permit.  This is a distinction without a rational basis or purpose.

---

[3] Transcript of Texas Senate State Affairs Committee Discussion of SB 1063, March 20, 1995.

26.     <u>Impact of the Public Corporation Ban</u>.  The public corporation ban injures Wal-Mart's business by depriving it of sales revenues in the Texas distilled spirits market.  Private corporations and other private entities may obtain a package store permit so long as they have the legitimate qualifications required by the TABC and conduct their business according to applicable standards.  But Wal-Mart and other public corporations are categorically excluded from the market without regard to their qualifications, or their willingness and ability to comply with applicable standards.

27.     Because Texas made a statutory exception for existing Texas package stores, the public corporation ban also principally and disproportionately discriminates against out-of-state corporations, such as Wal-Mart, that employ thousands of Texans, contribute millions of dollars to Texas communities, and collect and pay hundreds of millions of dollars in taxes.

28.     Worse, the ban against public corporations negatively impacts Texas consumers, who are forced to pay non-competitive prices because fair competition is prevented.

29.     Texas's ban against some but not all public corporations is nothing more than naked economic protectionism and violates the Constitution by arbitrarily excluding Wal-Mart and other public corporations from the retail spirits market.

### Texas's Limit on the Number of Package Store Permits

30.     Section 22.04 of the Texas Alcoholic Beverage Code prohibits any "person" from holding or having "an interest, directly or indirectly, in more than five package stores or in their business or permit."  Of the more than 60 types of permits and licenses created by the Code, only package store permits are subject to a numerical limit.[4]

---

[4] Section 1.04(6) of the Code defines "person" to mean "a natural person or association of natural persons, trustee, receiver, partnership, corporation, organization, or the manager, agent, servant, or employee of any of them."

31.   <u>Special Exemptions for Favored Individuals, Families, and Hotels</u>.   The discriminatory intent and effect of the provision is made clear by a statutory loophole that allows members of a package store permit holder's immediate family to consolidate permits (or stores) under a holding company and then acquire an unlimited number of additional permits. Specifically, Section 22.05 of the Code provides that "persons related within the first degree of consanguinity" who "have a majority of the ownership in two or more legal entities holding package store permits" may "consolidate the package store businesses into a single legal entity. That single legal entity may then be issued permits for all the package stores, notwithstanding [the five-store limit]."

32.   An internal Licensing Application Manual from the TABC further describes Section 22.05's "consolidation" loophole:

> What this section means in practical terms is that when a permittee has 5 package store permits and wishes to hold more, the only option he has is to consolidate with a blood relative of the first degree. The blood relative would apply for a package store permit. Once it is issued, the original permittee would "consolidate" his interest with his relative's permits and thereby obtain another package store permit. Specific instructions for consolidation are attached. Note that all applicants must qualify.
>
> Persons related in the "first degree of consanguinity" are as follows:
>
> Father/mother—daughter<br>Father/mother—son<br>Sister/brother
>
> A husband-wife relation <u>is not</u> within the first degree of consanguinity.

33.   When it comes to corporations, the TABC's "specific instructions," sharply limit the ability of corporations to utilize the "consolidation" loophole:

> If an individual holds a Package Store Permit and wishes to consolidate with a corporation, at least 51% of the stock of the corporation must be owned by an individual who has a consanguinity relationship with the existing permittee.

> If two corporations wish to consolidate, both corporations must have an individual who owns 51% of the stock and who are related within the first degree of consanguinity.[5]

34.     Wal-Mart has no "blood relative of the first degree" who owns 51% or more of Wal-Mart's stock, and no mother, father, sister, brother, daughter, or son available to take advantage of the unlimited consolidation loophole. As a result, certain private corporations and blood relatives may utilize the "consanguinity/consolidation" loophole to circumvent the five store limit, but no corporation or individual without a "blood relative of the first degree" may do so.  This arbitrary distinction between corporations and individuals with close blood relatives, and those without, creates separate classes of permit holders with no rational basis or purpose.

35.     The so-called five package store limit contains another loophole that also excludes Wal-Mart.  Section 22.04(d) provides that the five package store limit "does not apply to the stockholders, managers, officers, agents, servants, or employees of a corporation operating hotels, with respect to package stores operated by the corporation in hotels." Thus, any corporation operating package stores in a hotel may hold an unlimited number of package store permits, notwithstanding the five package store limit, and irrespective of whether the hotel or its owners have blood relatives within the first degree of consanguinity.   No consolidation or consanguinity is necessary because the number of hotel package store permits is unrestricted and unlimited.

36.     <u>Impact of Package Store Limit Loophole</u>.  Section 22.05's loophole has allowed many package store owners to circumvent the "five store restriction" and amass hundreds of package store permits.  The relatively few package store owners who have taken advantage of this loophole now account for more than 20% of Texas's 2,495 package stores.

---

[5] Texas Alcoholic Beverage Commission, Licensing Application Manual, Package Stores, Mar. 15, 2010.

37.    According to TABC spokeswoman Carolyn Beck: "If I own two or more package stores and my sister goes out and buys one or already owns up to five, hers can be consolidated into my legal entity, and I can end up with five more. If she ends up getting 10 outlets or more through consolidation, I can consolidate her locations into mine. *And you can end up with an unlimited amount of stores*."[6]

38.    In practice, the package store loophole has permitted a few favored companies to create large package store chains that dominate regional markets and limit consumer choice. For example:

- The six largest package store chains in Texas own 45% of the package stores in El Paso County, 43% of the package stores in Bexar County, and 31% of the package stores in Travis County.

- Texas allows Spec's Family Partners Ltd. to hold 160 package store permits.

- Texas allows Twin Liquors LP to hold 76 package store permits.

39.    Former TABC Administrator Alan Steen has described exactly how an individual could use the consolidation loophole to create a private corporation with virtually unlimited package store permits:

- Jones Incorporated, a Texas legal entity, is the holder of 25 package store permits. Jones Incorporated was created when the mother and father Jones, each holding 5 permits, consolidated with their three daughters, each of whom were the holders of 5 package store permits.

- Joe Applicant, an individual, acquires 100% of the ownership interest in Jones Incorporated, a Texas legal entity.

- Joe Applicant files a change of ownership interest reflecting his 100% ownership of Jones Incorporated.

- Jones Incorporated continues to be the legal entity that is the permit holder in 25 package stores.

---

[6] Eric Griffey, *Liquor by the Big Box*, FORT WORTH WEEKLY, Mar. 16, 2013.

- Joe Applicant's mother is the holder of five package store permits. Under § 22.05, these permits may be consolidated under Jones Incorporated. Jones Incorporated would then be the holder of 30 package store permits.[7]

40.     Moreover, once an eligible relative consolidates permits into a private corporation, the eligible relative may acquire additional permits and consolidate those permits as well.

41.     The exceptions and loopholes have, in practice, swallowed the five package store limit.  Further, the package store limit, as applied, has created separate classes of permit holders who are unlawfully and arbitrarily treated differently.   Private corporations, families, and individuals may acquire unlimited numbers of package store permits, but public corporations may not acquire a single one.

### Texas's Restriction on Package Store Owner Interests

42.     Wal-Mart currently holds 543 BQ permits for wine and beer sales; 3 BF licenses to sell beer; and one Q permit to sell wine.  In order to apply for a package-store permit, Wal-Mart would be required to first abandon all of its existing 543 BQ permits, because Section 22.06 of the Code forbids a BQ permittee from simultaneously holding even one package-store permit. Although Section 22.06 forbids a *BQ* permittee from simultaneously holding a package-store permit, that Section does not forbid someone who holds both a *Q* permit and a *BF* license from also holding a package-store permit.  This is a distinction without a purpose.

43.     BQ permit holders may sell wine, beer, and malt liquors in unbroken original containers for off-premises consumption.  BF license holders may sell beer, and Q permit holders may sell wine, ale, and vinous liquors in unbroken original containers for off-premises consumption.   The same wine and beer sales authorized by holding a BQ permit are also authorized by holding a BF license and Q permit.   There is only one significant difference

---

[7] Letter from TABC Administrator Alan Steen to Texas Representative Senfronia Thompson, Mar. 31, 2009.

between holding a BQ permit and holding both a BF license and Q permit: Holding a BF license and Q permit does not prevent the retailer, and would not prevent Wal-Mart, from holding a package-store permit.

44.     Abandoning its 543 BQ permits to make a package store permit application would cause Wal-Mart significant and unlawful injury.  Either Wal-Mart would be required to cease selling beer and wine altogether, or would be forced to apply for 543 new beer licenses (BF licenses) and 543 new wine permits (Q permits).  These 1,086 new licenses and permits would authorize all of the beer and wine sales that already are fully authorized by Wal-Mart's 543 existing BQ permits.  The cost to Wal-Mart of applying for and obtaining 1,086 new BF licenses and Q permits to replace its existing BQ permits would be approximately $1,301,028, of which $893,778 would consist of fees and surcharges payable to the TABC and to local counties and cities; and of which $407,250 would consist of other costs of making the applications (e.g., the cost of required newspaper publications; surveys; and licensing-service fees).  This does not include the significant cost in employee time, attorneys' fees, and delay that Wal-Mart would be forced to incur.  This irrational distinction among retailers who engage in the same pursuit at the same time under like circumstances serves no valid governmental purpose and creates separate classes of retailers with no rational difference.

45.     <u>Wal-Mart's Package Store Business Plan</u>.  Wal-Mart has developed a concrete business plan to obtain Texas package-store permits for more than five existing Walmart and Sam's Club locations.  Other than the provisions of the Code that this Court should declare unconstitutional and invalid, Wal-Mart's sales of distilled spirits at the planned locations would comply with all state and local laws.  For example, each location would have entirely separate entrances and would not be accessible directly from the retail store.  Unaccompanied minors

would be prohibited from entering any location where spirits are sold. Underage employees would not be permitted to work where spirits are sold.

46.     Wal-Mart currently abides by a wide range of Texas requirements related to its sale of pharmaceuticals, tobacco, beer, wine, and firearms.  In accordance with its business plan and past practices, Wal-Mart will abide by all safety requirements, day and time of sales restrictions, age restrictions, and store design requirements applicable to package store permit holders.  Wal-Mart has abided by similar requirements in the 25 other states where it currently sells spirits at retail package stores, and will abide by those same restrictions here in Texas.

47.     <u>Wal-Mart's Constitutional Claims Are Ripe</u>.  The TABC does not have authority to declare Texas statutes unconstitutional.  Therefore, Wal-Mart seeks a legal determination and declaration from this Court that the challenged provisions violate the United States Constitution. If Wal-Mart were required to apply for package-store permits prior to obtaining judicial review in this Court, the application and the TABC's denial of the application would not result in the development of any additional facts that would be relevant to the resolution of the constitutional questions posed by this Complaint.

48.     If Wal-Mart applied for even one package-store permit, Texas law would require the TABC to deny the permit because Wal-Mart is a public corporation, and any entity owned directly or indirectly by Wal-Mart is prohibited from obtaining a package store permit.  If Wal-Mart, in pursuit of its Texas business plan, were to apply for more than five package-store permits, Texas law would require the TABC to deny the permits because of the five package store limit and Wal-Mart's inability to take advantage of the "consolidation" loophole.  Thus, requiring Wal-Mart to apply for (and be denied) package-store permits prior to obtaining judicial review would be futile, because the application process cannot provide a determination of the

16

constitutionality of Texas's ban on public corporations holding package store permits, Texas's ban on BQ permitees holding package store permits, and Texas's exception-ridden five-store limit on package store permits.

49. <u>Wal-Mart Does Not Challenge the Three-Tier System in Texas</u>.  Texas and several other states have created a three-tier system within the alcoholic beverages market to separate the licensing and control of three tiers: production, distribution, and retail.  In general, a licensee or permittee at one tier is prohibited from having a direct or indirect interest in a licensee or permittee at a different tier.  The Texas three-tier system also prohibits producers from selling directly to retailers or consumers.

50. Wal-Mart supports the Texas three-tier system of manufacturers, distributors, and retailers.  Wal-Mart does not seek (in this action or otherwise) any right to compete in the production or distribution tiers of the three-tier system.  Nor does Wal-Mart seek to purchase alcoholic beverage products directly from producers, or to become anything other than a retailer of alcoholic beverages.  In addition, Wal-Mart does not seek to change any of the Texas laws regarding the sale of spirits from within separate premises, selling on Sundays, permissible hours of sale, or proximity to churches or schools.  All Wal-Mart seeks is relief from unconstitutional Texas laws that prevent it from participating in the retail tier of the sale of distilled spirits to retail customers for off-premises consumption.

## CAUSES OF ACTION

### Count I - Violation of the Equal Protection Clause of the
### Fourteenth Amendment to the U.S. Constitution

51.     Wal-Mart hereby incorporates the allegations set forth above, all of which are fully re-alleged here.

52.     The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

53.     As the Supreme Court has held, "arbitrary and irrational discrimination violates the Equal Protection Clause under even [the] most deferential standard of review." *Bankers Life & Cas. Co. v. Crenshaw*, 486 U.S. 71, 83 (1988). Indeed, providing "a shield against arbitrary classifications" is the "core concern" of the Equal Protection Clause. *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 598 (2008).

54.     No rational or non-arbitrary basis exists for Section 22.16 of the Code and its differential treatment of public corporations and private business organizations in the issuance of package store permits. Allowing private corporations and other business organizations a right to own and hold package store permits, while denying that same right to public corporations (except for hotels and certain Texas-resident public corporations who held permits before April 1995), constitutes discrimination by the State, for which no rational basis exists, in violation of the Equal Protection Clause.

55.     When the requirements of the Equal Protection Clause are applied to Sections 22.04 and 22.05 of the Code, it is equally clear that no rational basis exists for distinguishing between individuals and corporations who qualify to hold more than five package store permits and those who do not.   Specifically, the differential treatment among corporations and

18

individuals in the consolidation of package store permits, allowing persons within the first degree of consanguinity to consolidate multiple package stores into a single company, notwithstanding the five-store limit, while denying corporations and individuals with no close blood relative that same consolidation right, constitutes discrimination by the State, for which no rational basis exists, in violation of the Equal Protection Clause.

56.     Sections 22.04(d) and 22.16(d), by exempting publicly traded hotel corporations from the ban on publicly traded corporations holding package store permits, and by exempting hotel package store owners from the five package store limit creates separate classes of potential permit holders, discriminate against publicly traded corporations that operate stores outside of hotels, and make irrational distinctions with no rational basis or purpose, in violation of the Equal Protection Clause.

57.     Section 22.06, by requiring a BQ permittee to abandon its BQ permits and undertake the costly and time consuming process of replacing them with BF and Q permits, is also irrational and discriminatory and violates the Equal Protection Clause.

58.     Pursuant to the Declaratory Judgment Act and 42 U.S.C. § 1983, Wal-Mart respectfully requests the Court enter (1) a judgment declaring that Defendants violate the Equal Protection Clause insofar as they would deny Wal-Mart the ability to hold any package-store permit based on Wal-Mart's status as a public corporation, (2) a judgment declaring that Defendants violate the Equal Protection Clause insofar as they would deny Wal-Mart the ability to use the "consolidation" procedure to obtain more than five package-store permits, (3) a judgment declaring that Defendants violate the Equal Protection Clause insofar as they would require Wal-Mart to abandon its BQ permits to obtain package-store permits, and (4) an injunction against the Defendants enforcing Sections 22.04, 22.05, 22.06 and 22.16 of the Code.

## Count II - Violation of the Commerce Clause of
## Article I, Section 8 of the U.S. Constitution

59.     Wal-Mart hereby incorporates the allegations set forth above, all of which are fully re-alleged here.

60.     The Commerce Clause of the U.S. Constitution provides that "Congress shall have Power … [t]o regulate Commerce … among the several States." U.S. Const. art. I, § 8, cl 3. That affirmative grant of power to Congress also limits the power of state and local governments to pass legislation affecting interstate commerce.

61.     The Commerce Clause prohibits state laws that discriminate against interstate commerce and engage in economic protectionism, i.e., measures designed to benefit local economic interests by burdening out-of-state competitors. *See, e.g., W. Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 201-02 (1994); *Cooper v. McBeath*, 11 F.3d 547, 554 (5th Cir. 1994).

62.     Section 22.16 discriminates against interstate commerce.  Section 22.16 was enacted in the legislative session immediately following the Fifth Circuit's decision in *Cooper.* Section 22.16 replaces the state's unconstitutional residency requirement with a ban on "public corporations," which accomplishes the same unconstitutional end: excluding out-of-state corporations, like Wal-Mart, from the business of retailing "spirits" in Texas.  Because out-of-state corporations were previously barred from obtaining a package-store permit before the *Cooper v. McBeath* decision in 1994, Section 22.16's enactment soon thereafter effectively continued the impermissible ban on out-of-state competition that was in place before *Cooper.*

63.     In addition, Section 22.16 requires the irrational and discriminatory treatment of public corporations, and creates separate classes of retailers with no rational difference or purpose.  One class of retailers—public corporations—are denied the equal protection of the law by imposing burdens on their entry into the distilled spirits market that are not imposed upon a

20

favored class of retailers that engage in the same pursuit at the same time and under like circumstances.  These irrational and discriminatory provisions are nothing more than economic protectionism, unfairly exclude public corporations from the distilled spirits market, and impose unconstitutional burdens on interstate commerce that violate the Commerce Clause.

64.     Sections 22.04 and 22.05 discriminate against interstate commerce. The Code allows persons within the first degree of consanguinity an opportunity to consolidate multiple package stores to circumvent the five package store limit, but denies that same "consolidation" right to any individual or corporation that does not possess a "blood relative" capable of applying for additional package-store permits.  Out-of-state competitors—particularly out-of-state public corporations—are extremely unlikely to have a qualifying "blood relative."  By excluding such entities from utilizing the consolidation loophole, the Code forbids them from further participation in trade and commerce beyond five package stores, and imposes unconstitutional burdens on interstate commerce in violation of the Commerce Clause.

65.     Pursuant to the Declaratory Judgment Act, and 42 U.S.C. § 1983, Wal-Mart respectfully requests the Court enter (1) a judgment declaring that Defendants violate the Commerce Clause insofar as they would deny Wal-Mart the ability to hold any package-store permit based on Wal-Mart's status as a public corporation, (2) a judgment declaring that Defendants violate the Commerce Clause insofar as they would deny Wal-Mart the ability to use the "consolidation" procedure to obtain more than five package-store permits, and (3) an injunction against the Defendants enforcing Sections 22.04, 22.05 and 22.16 of the Code.

3555425v1/014505

## Count III - Violation of the Comity Clause of
## Article IV, Section 2 of the U.S. Constitution

66.     Wal-Mart hereby incorporates the allegations set forth above, all of which are fully re-alleged here.

67.     The Comity Clause states: "The Citizens of each state shall be entitled to all Privileges and Immunities of Citizens in the several states."  U.S. Const. Art. IV, § 2.

68.     "[T]he purpose of that clause . . . is to outlaw classifications based on the fact of non-citizenship unless there is something to indicate that non-citizens constitute a peculiar source of the evil at which the statute is aimed." *Toomer v. Witsell*, 334 U.S. 385, 398 (1948). That is, denial of a privilege or immunity to nonresidents "is invalid unless (i) there is a substantial reason for the difference in treatment; and (ii) the discrimination practiced against nonresidents bears a substantial relationship to the State's objective." *Barnard v. Thorstenn*, 489 U.S. 546, 552 (1989).

69.     Section 22.16 discriminates against out-of-state residents.  Because out-of-state corporations were previously barred from obtaining a package-store permit before the *Cooper v. McBeath* decision in 1994, Section 22.16's enactment soon thereafter effectively continued the impermissible ban on out-of-state competition that was in place before *Cooper*.

70.     Sections 22.04 and 22.05 discriminate against out-of-state residents.  The Code denies the "consolidation" procedure to anyone who does not possess a "blood relative" capable of applying for an additional package-store permit.  Out-of-state residents—particularly out-of-state public corporations—are extremely unlikely to have a "blood relative" that qualifies for the "consolidation" procedure.  This furthers the prohibition against public corporations entering the Texas marketplace, and further protects existing Texas package stores from out-of-state competition.

71.     Pursuant to the Declaratory Judgment Act, and 42 U.S.C. § 1983, Wal-Mart respectfully requests the Court enter (1) a judgment declaring that Defendants violate the Comity Clause insofar as they would deny Wal-Mart the ability to hold any package-store permit based on Wal-Mart's status as a public corporation, (2) a judgment declaring that Defendants violate the Comity Clause insofar as they would deny Wal-Mart the ability to use the "consolidation" procedure to obtain more than five package-store permits, and (3) an injunction against the Defendants enforcing Sections 22.04, 22.05 and 22.16 of the Code.

**<u>ATTORNEYS' FEES</u>**

72.     Wal-Mart hereby requests all costs and reasonable attorneys' fees.

**<u>PRAYER AND RELIEF REQUESTED</u>**

WHEREFORE, Plaintiffs pray for judgment as follows:

A.     For a declaratory judgment that Section 22.16 of the Texas Alcoholic Beverage Code is unconstitutional insofar as it denies Wal-Mart the ability to hold a package-store permit.

B.     For a declaratory judgment that Sections 22.04 and 22.05 of the Texas Alcoholic Beverage Code are unconstitutional insofar as they deny Wal-Mart the ability to obtain more than five package-store permits.

C.     For a declaratory judgment that Section 22.06 of the Texas Alcoholic Beverage Code is unconstitutional insofar as it would require Wal-Mart to abandon its BQ permits to obtain package-store permits.

D.     For an injunction against the enforcement of Sections 22.04, 22.05, 22.06 and 22.16 of the Texas Alcoholic Beverage Code.

E.     For an award of attorneys' fees and court costs; and

3555425v1/014505

F.      For all other relief to which Wal-Mart is justly entitled.


DATED: February 12, 2015                        Respectfully submitted,

                                                By:  */s/ Neal Manne*
                                                Neal Manne (TX Bar No. 12937980)
                                                Alex Kaplan (TX Bar No. 24046185)
                                                Chanler Langham (TX Bar No. 24053314)
                                                SUSMAN GODFREY LLP
                                                1000 Louisiana Street, Suite 5100
                                                Houston, Texas 77002
                                                Telephone:  (713) 651-9366
                                                Facsimile:  (713) 654-6666
                                                nmanne@susmangodfrey.com
                                                akaplan@susmangodfrey.com
                                                clanghman@susmangodfrey.com

                                                Steven M. Shepard (NY Bar No. 5291232)*
                                                SUSMAN GODFREY LLP
                                                560 Lexington Avenue, Fifteenth Floor
                                                New York, New York 10022-6828
                                                Telephone: (212) 336-8330
                                                Facsimile: (212) 336-8340
                                                sshepard@susmangodfrey.com

                                                Mark T. Mitchell (TX Bar No. 14217700)
                                                Frederick W. Sultan (TX Bar No. 00797524)
                                                GARDERE WYNNE SEWELL LLP
                                                One American Center
                                                600 Congress Avenue, Austin, Texas 78701
                                                Telephone: (512) 542-7000
                                                Facsimile: (512) 542-7100
                                                mmitchell@gardere.com
                                                fsultan@gardere.com

                                                COUNSEL FOR PLAINTIFFS

                                                * Motion for admission *pro hac vice* to be filed

24