IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| WAL-MART STORES, INC., ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | 1-15-CV-134 RP |
| | § | |
| TEXAS ALCOHOLIC BEVERAGE | § | |
| COMMISSION, ET AL., | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are Defendants' Motion to Dismiss Plaintiff's Original Complaint for Declaratory and Injunctive Relief and Incorporated Memorandum of Law, filed May 5, 2015 (Clerk's Dkt. #11) and the responsive pleadings thereto. After reviewing the pleadings, relevant case law, as well as the entire case file, the Court issues the following order.

### I. BACKGROUND

Plaintiffs Wal-Mart Stores, Inc. ("Wal-Mart"), Wal-Mart Stores Texas, LLC, Sam's East, Inc. and Quality Licensing Corp. filed this action naming as defendants the Texas Alcoholic Beverage Commission ("TABC"), Jose Cuevas, Jr. in his official capacity as Presiding Officer of the TABC, as well as Steven M. Weinberg and Ida Clement Steen, each in their official capacity as Commissioners of the TABC.

Wal-Mart is a publicly traded corporation which owns and operates retail stores in Texas, in part through its wholly-owned subsidiaries, the other three plaintiffs in this action. Wal-Mart sells wine, beer or both in its stores. Texas law requires a seller of wine and beer to maintain a license or permit for each store to sell those beverages. Quality Licensing Corp. holds the TABC licenses and permits authorizing Wal-Mart to sell wine and beer. Wal-Mart sells distilled spirits in other states, and would like to do so in Texas. As set forth below, the Texas regulatory scheme

governing licenses for the sale of alcoholic beverages (the "Code") prevents Wal-Mart from obtaining the permits required to do so.[1]

The Code grants to the TABC the authority to issue a variety of permits for the sale of alcohol. *See* TEX. ALCO. BEV. CODE ANN. § 5.31(b)(5) (authorizing TABC to "ensure a consistent, predictable, and timely licensing and permitting process" under the Code). The holder of a package store permit may sell all types of alcoholic beverages, including distilled spirits. *Id*. § 22.01. A "public corporation," defined as publicly traded corporations or those with more than thirty-five shareholders, is prohibited from holding a package store permit. *Id*. § 22.16. The public corporation prohibition does not apply to either a package store located in a hotel or to holders of permits issued before April 1995. *Id*.

Wal-Mart alleges that the intent of the public corporation prohibition is to favor Texas residents over non-residents. According to Wal-Mart, this intent is apparent when the history of the prohibition is examined. The public corporation prohibition was enacted by the Texas legislature in 1995, following the Fifth Circuit's decision in *Cooper v. McBeath*, 11 F.3d 547 (5th Cir. 1994). In *Cooper* the Fifth Circuit held that the Code's prior requirement that an applicant for a permit to sell alcohol must have been a resident of Texas for at least one year violated the Commerce Clause. *Id*. at 554. According to Wal-Mart, floor debate and discussion in committee hearings of the bill enacting the challenged Code provisions make clear the legislature was intending to continue to favor in-state ownership of package store permits, in the wake of the Fifth Circuit's opinion. (Orig. Compl. ¶¶ 21-23). Wal-Mart further alleges that the legislature's intent is made clear by the fact that the public corporation prohibition does not apply to holders of permits issued before April 1995, that is issued when the Code required holders to be Texas residents. (*Id*.

---

[1] Under the Code, "alcohol" is the term for all beverages containing alcohol, "liquor" is the term for alcoholic beverages in excess of four percent alcohol,. The terms "distilled spirits," "wine" and "beer" all describe types of alcoholic beverages based on their method of production. TEX. ALCO BEV. CODE ANN. § 1.04

¶ 24).

Wal-Mart additionally alleges the Code's discriminatory purpose and effect are evidenced by its limits on package store permits. The Code provides that no "person" may hold or have an interest in more than five package store permits. TEX. ALCO. BEV. CODE ANN. § 22.04(a).[2] Again, this limit exempts package store permits owned by hotels. *Id*. § 22.04(d). The Code provides an additional exemption:

> If one person or two or more persons related within the first degree of consanguinity have a majority of the ownership in two or more legal entities holding package store permits, they may consolidate the package store businesses into a single legal entity. That single legal entity may then be issued permits for all the package stores, notwithstanding any other provision of this code.

*Id*. § 22.05.

According to Wal-Mart, in practice and pursuant to an internal Licensing Application Manual from the TABC, this provision allows blood relatives to continually acquire licenses, consolidate them into a single private entity, transfer ownership of the private entity to one family member, and then repeat the process. (Orig. Compl. ¶¶ 31-41). Wal-Mart alleges this practice has resulted in a few companies accounting for more than 20% of Texas' package stores in total, with the six largest companies owning 45% of the package stores in El Paso County, 43% of the package stores in Bexar County and 31% of the package stores in Travis County. (*Id*. ¶¶ 36-38).

Wal-Mart finally complains the Code requires current beer and wine permit holders from simultaneously holding package store permits. Specifically, Wal-Mart states it currently holds 543 BQ permits for wine and beer sales, 3 BF licenses to sell beer and 1 Q permit to sell wine. According to Wal-Mart, to apply for a package store permit, Wal-Mart would be required to first

---

[2] The Code defines a "person" as "a natural person or association of natural persons, trustee, receiver, partnership, corporation, organization, or the manager, agent, servant, or employee of any of them." TEX. ALCO. BEV. CODE ANN. § 1.04 (6).

abandon all of its existing BQ permits. *See* TEX. ALCO. BEV. CODE ANN. § 22.06 (restricting package store permit holders from also owning interest in wine and beer retailer's permit). However, the Code does not limit a holder of a BF license or Q permit from also holding a package store permit. Wal-Mart alleges the cost of abandoning its current BQ permits, and applying for separate BF licenses and Q permits so as to be eligible for a package store permit would exceed $1 million. According to Wal-Mart, this irrational distinction among retailers engaged in the same businesses serves no valid governmental purpose and creates separate classes of retailers with no rational difference. (Orig. Compl. ¶ 44).

Plaintiffs assert causes of action for violation of their constitutional rights under the Equal Protection Clause, the Commerce Clause and the Privileges and Immunities Clause of the United States Constitution. (*Id.* ¶¶ 51-71). Plaintiffs seek declaratory and injunctive relief, as well as attorneys' fees and costs.

Defendants have filed a motion to dismiss all of the claims for failure to state a claim. The parties have filed responsive pleadings and the motion is ripe for determination. .

## II. APPLICABLE LAW

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to "state

4

a claim to relief that is plausible on its face." *Id.* at 1974. The Supreme Court has made clear this plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The standard is properly guided by "[t]wo working principles." *Id*. First, although "a court must accept as true all of the allegations contained in a complaint," that tenet is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, in considering a motion to dismiss, the court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief. If not, "the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id*. (quoting FED. R. CIV. P. 8(a)(2)).

### III. ANALYSIS

#### A. Equal Protection Clause

Defendants first argue Wal-Mart's equal protection attacks all fail as a matter of law. Wal-Mart maintains no rational or non-arbitrary basis exists for the differential treatment under the Code of: (1) public corporations and private business organizations in the issuance of package store permits; (2) public corporations and individuals without close blood relatives and individuals with close blood relatives in relation to the acquisition and consolidation of package store permits; (3) public corporations and publicly traded hotel corporations in relation to holding package store permits; and (4) BQ permit holders and holders of BF licenses and Q permits in regard to holding package store permits.

Defendants maintain, and Wal-Mart does not disagree, that "[b]ecause [Wal-Mart] is not a member of a protected class, and the classification does not infringe upon fundamental constitutional rights, we apply rational basis review." *Hines v. Alldredge*, 783 F.3d 197, 202-03 (5th Cir. 2015). "Under rational basis review, differential treatment 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Madriz–Alvarado v. Ashcroft*, 383 F.3d 321, 332 (5th Cir. 2004) (quoting *FCC v. Beach Commc'ns*, 508 U.S. 307, 313 (1993)). *See also Romer v. Evans*, 517 U.S. 620, 631 (1996) (law survives equal protection analysis, "so long as it bears a rational relation to some legitimate end").

The Fifth Circuit describes an equal protection challenge as focusing on three elements: (1) the classification; (2) the purpose which the classification is designed to serve; and (3) "the 'fit' between the classification and the purpose; that is, whether the state could rationally determine that by distinguishing among persons as it has, the state could accomplish its legitimate purpose." *Mahone v. Addicks Util. Dist. of Harris Cnty.*, 836 F.2d 921, 933 (5th Cir. 1988). As to the first element, the classification system is clear in this case.

As to the second element, the Code identifies its purpose as "an exercise of the police power of the state for the protection of the welfare, health, peace, temperance, and safety of the people of the state." TEX. ALCO. BEV. CODE ANN. § 1.03. *See Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 463 n.7 (1981) (court will generally assume objectives articulated by legislature are actual purpose of statute). Defendants assert the regulations at issue are designed to serve the state's legitimate interest in temperance by restricting access to alcohol.[3] *See Wine & Spirits*

---

[3] In a footnote, Defendants briefly suggest the Texas Legislature may also have "sought to ensure orderly market conditions, avoid discounting or significant reductions in the price of liquor, or achieve increased accountability from permit holders" by way of the regulatory scheme at issue. (Def. Mot. at 11 n.6). However, as Wal-Mart points out, Defendants do no more than suggest such reasoning might have been relied upon. Wal-Mart argues that the conclusory assertion of the argument, without more, is simply not a sufficient legal basis for dismissal of Wal-Mart's claims. Tellingly, Defendants do not reurge these grounds in their reply. Accordingly, the Court declines to consider them.

*Retailers, Inc. v. Rhode Island*, 481 F.3d 1, 13 (1st Cir. 2007) (looking to stated purpose of liquor license regulations as "promotion of temperance and for the reasonable control of the traffic in alcoholic beverages"). Wal-Mart does not disagree with Defendants that Texas has a legitimate interest in protecting temperance, and even restricting access to alcohol by its citizens. *See Maxwell's Pic-Pac, Inc. v. Dehner*, 739 F.3d 936, 940 (6th Cir. 2014) (the state "indisputably maintains a legitimate interest in reducing access to products with high alcohol content," concluding "the 21st Amendment's express grant of authority to the states, if it means anything in this context, provides legitimacy to the state's interest in restricting access to alcohol"). Rather, Wal-Mart contends the Code's restrictions bear no rational relationship to the asserted interest. That is, Wal-Mart focuses its challenge on the third element, whether the legislation "fits" the asserted interest.

As a threshold matter, Wal-Mart urges the Court to view Defendants' assertion of a "legitimate governmental interest" through a skeptical lens, contending the true reason for the adoption of the restrictions at issue was economic protectionism. Wal-Mart argues courts have repeatedly recognized that protecting a discrete interest group from economic competition is not a legitimate governmental purpose. *See City of Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978) ("Thus, where simple economic protectionism is effected by state legislation, a virtually per se rule of invalidity has been erected"); *Craigmiles v. Giles*, 312 F.3d 220, 224 (6th Cir. 2002) ("protecting a discrete interest group from economic competition is not a legitimate governmental purpose"). *See also Energy Reserves Group, Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 411 (1983) (distinguishing between legitimate state purposes and "providing a benefit to special interests").

The Fifth Circuit has largely agreed, stating "neither precedent nor broader principles suggest that mere economic protection of a particular industry is a legitimate governmental purpose." *St. Joseph Abbey v. Castille*, 712 F.3d 215, 222-23 (5th Cir.), *cert. denied*, 134 S. Ct. 423 (2013). However, the court also found "economic protection" was not per se impermissible,

7

if it could be "supported by a post hoc perceived rationale." *Id*. *See Greater Houston Small Taxicab Co. Owners Ass'n v. City of Houston*, 660 F.3d 235, 240 (5th Cir. 2011) (rejecting challenge to taxi cab permitting scheme disfavoring small cab companies, finding even if scheme was "motivated in part by economic protectionism, there is no real dispute that promoting full-service taxi operations is a legitimate government purpose under the rational basis test"). *See also Railroad Retirement Bd. v. Fritz*, 449 U.S. 166, 179 (1980) (under rational basis review, it is "constitutionally irrelevant [what] reasoning in fact underlay the legislative decision"). Here, Defendants have asserted a basis other than economic protectionism, even if post hoc, and the Court must thus analyze whether the challenged portion of the Code"fits" the asserted interest. *See St. Joseph Abbey*, 712 F.3d at 223 (addressing state's alternative argument, that challenged restrictions on casket sales were rationally related to protection of public health, safety, and consumer welfare, after rejecting economic protectionism as legitimate governmental interest).

Defendants contend Wal-Mart's challenge fails, because the State may permissibly restrict access to liquor by capping either "the number of places that supply it" or limiting "the types of places that supply it." *Maxwell's Pic-Pac*, 739 F.3d at 941. In support, Defendants cite a number of cases upholding restrictive liquor licensing regulations under the Equal Protection Clause. *See, e.g., Maxwell's Pic-Pac*, 739 F.3d at 941 (upholding state statute banning supermarkets and convenience stores from selling wine or liquor, but permitting drugstores to sell such items); *Spudich v. Smarr*, 931 F.2d 1278, 1281 (8th Cir. 1991) (upholding state regulation allowing sale of liquor at bowling alleys and soccer stadiums, but not billiard parlors, on Sundays); *Parks v. Allen*, 426 F.2d 610, 614 (5th Cir. 1970) (upholding city ordinance limiting family to two liquor licenses); *McCurry v. Alcoholic Beverage Control Div.*, 4 F. Supp. 3d 1043, 1047 (E.D. Ark. 2014) (upholding state statute prohibiting companies or people from profiting from more than one package store permit).

As Wal-Mart points out, however, protecting "temperance" has its limits as a justification.

*See Cooper*, 11 F.3d at 554 (referring to state's citation to Code section setting forth purpose as "boilerplate enabling language [which] hardly explains the State's particular restrictions on out-of-state ownership of various liquor licenses"). And Wal-Mart correctly further points out that the cases cited by Defendants all address time, place, or manner restrictions on alcohol sales. Notably, the regulations at issue in this case do not restrict access to liquor in any of those ways, but rather restrict eligibility to own package store permits.

Defendants suggest allowing public corporations to own package stores would result in the proliferation of these establishments, leading to greater and easier access to liquor. But this purported rationale provides no explanation for the Code's "grandfathering" of public corporations granted permits issued before April 1995, or the exemption of hotels, even if owned by a public corporation. Similarly, while the five-store limit for non-public corporations could conceivably limit the number of package stores, the exclusion permitting consolidation by family members contradicts that asserted rationale.

In addition, Wal-Mart contends even if the ban on public corporation ownership of package stores would restrict Texans' access to liquor, the method of doing so is arbitrary. The Supreme Court some years ago prohibited such methods, holding "[t]he State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 446 (1985) (general interest in avoiding construction on a "flood plain" insufficient to justify ordinance forbidding home for the mentally ill but no other institutions). *See Mathews v. Lucas*, 427 U.S. 495, 510 (1976) (noting rational basis test "is not a toothless one").

Defendants suggest the Texas Legislature may have decided excluding public corporations and encouraging family-owned business was a reasonable, rather than arbitrary, way to achieve

the asserted end of restricting access to alcohol.[4] According to Defendants, the Texas Legislature could have believed employees and owners of a family-owned business could more easily be held accountable by the community or that small business owners are more likely to be invested in the community and better safeguard the health and welfare of the community.

However, these assertions are rebutted by several facets of the Code. First, the Code does not require an entity holding a package store permit to be "family-owned." Rather, the Code permits entities with up to thirty-four shareholders, as well as hotels, even if owned by a public corporation, to hold such permits. Second, families, or at least certain close family members, can accumulate an unlimited number of package store permits–hardly a restriction of access to alcohol. Third, as Wal-Mart points out, the family members are in no way required to live in the area where the store is. Indeed, even if a person or entity held a single package store permit, there is no guarantee that person lives in or is otherwise involved in the local community. In addition, Wal-Mart has alleged family-owned "chains" own a significant portion of the package stores in three large Texas counties. (Orig. Compl. ¶ 38). In sum, Wal-Mart has alleged sufficient facts which rebut the community involvement justification offered by Defendants

As the Fifth Circuit has made clear, "a hypothetical rationale, even post hoc, cannot be fantasy" and cannot be based on "post hoc hypothesized facts." *St. Joseph Abbey*, 712 F.3d at 221, 223. Accordingly, the Court concludes Wal-Mart's allegations, at this stage of the analysis, are sufficient to state a claim that the challenged portions of the Code violate the Equal Protection Clause.

**B. Commerce Clause**

Defendants also contend Wal-Mart's claim that the Code provisions at issue violate the Commerce Clause fails as a matter of law. The Constitution grants to Congress the power "[t]o

---

[4] It is not clear to the Court that the Texas Legislature's belief in its own reasonableness is sufficient to save a challenged statute which is in fact arbitrary.

regulate Commerce ... among the several States." U.S. CONST., Art. I, § 8, cl. 3. The Commerce Clause also contains a "dormant" facet that serves as "a substantive restriction on permissible state regulation of interstate commerce." *Dennis v. Higgins*, 498 U.S. 439, 447 (1991). *See Dickerson v. Bailey*, 336 F.3d 388, 395 (5th Cir. 2003) (logical corollary to Congress' power to regulate commerce among the states is that states lack power to impede interstate commerce with their own regulations). The Supreme Court has adopted a "two-tiered approach to analyzing state economic regulations under the Commerce Clause." *Brown-Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 578-79 (1986). The challenged statute is first examined to determine if it discriminates against interstate commerce either facially, by purpose, or by effect, or whether the statutes regulates evenhandedly with only an indirect burden on interstate commerce. *Allstate Ins. Co. v. Abbott*, 495 F.3d 151, 160 (5th Cir. 2007); *Dickerson*, 336 F.3d at 396. *See also Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 270 (1984) (classifying base on whether statute under review reflects a "discriminatory purpose" or merely a "discriminatory effect"). Based on that classification, the court then reviews the statute under the applicable standard.

In moving to dismiss, Defendants limit their argument solely to the first portion of the analysis. That is, they contend there is no discrimination or burden on interstate commerce. The Court, therefore, addresses only that issue.

Before turning to that issue, however, Defendants argue the Court must conduct the analysis of this case in light of the Supreme Court's recognition that the three-tier system for alcohol distribution employed by Texas and other states is "unquestionably legitimate." *Granholm v. Heald*, 544 U.S. 460, 488-89 (2005). Defendants argue Wal-Mart's claim is a challenge to the system, and thus foreclosed.

In particular, Defendants point to the Supreme Court's recognition that "[t]he Twenty-first Amendment grants the States virtually complete control over whether to permit importation or sale of liquor and how to structure the liquor distribution system. *Id*. They further argue the Fifth Circuit

has concluded the Twenty-first Amendment permits a State to treat a retailer located outside the state differently from one located in the state in regards to delivery of alcohol. *See Wine Country Gift Baskets.com v. Steen*, 612 F.3d 809, 820 (5th Cir. 2010) (upholding laws allowing in-state retailers to deliver alcoholic beverages to their customers within designated local areas, but forbidding out-of-state retailers from delivering or shipping alcoholic beverages to customers anywhere in Texas).

In *Wine Country* the Fifth Circuit rejected the out-of-state retailers' Commerce Clause attack because the in-state and out-of-state retailers were not similarly situated. *Id*. *See Int'l Truck & Engine Corp. v. Bray*, 372 F.3d 717, 725 (5th Cir. 2004) (state statute impermissibly discriminates only when state discriminates among similarly situated in-state and out-of-state interests). The court pointed out that permitting out-of-state retailers to deliver state-wide would actually result in more favorable treatment than afforded in-state retailers who were permitted to deliver only within the county in which they were located, and thus concluded local deliveries were "a constitutionally benign incident of an acceptable three-tier system." *Wine Country*, 612 F.3d at 820.

Defendants' reliance on *Wine Country*, and the Twenty-first Amendment is misplaced. In this case, Wal-Mart is not seeking to become a retailer located out-of-state. Rather, Wal-Mart wishes to become an in-state retailer. The Fifth Circuit itself acknowledged the distinction, in harmonizing its decision with the decision in *Cooper* striking down Texas' residency requirements for liquor store owners, stating "[o]ur case concerns physical location of businesses; *Cooper* concerned legal residence of owners. The former is a critical component of the three-tier system, while the latter is not involved." *Id.* at 821. Thus, the Court rejects Defendants' contention that Wal-Mart's claims should be viewed as challenging the three-tier system for alcohol distribution in Texas.

Defendants also argue the Commerce Clause claim fails because Wal-Mart has not alleged facts showing the Code provisions constitute discrimination against interstate commerce.

Defendants maintain the challenged portions of the Code are clearly facially neutral as the public corporation prohibition and five permit limit apply equally to persons and entities located in and out of Texas. Further, Defendants point out the Fifth Circuit has found distinctions based on business form to withstand a Commerce Clause challenge. *See Allstate Ins. Co. v. Abbott*, 495 F.3d 151, 160 (5th Cir. 2007) (state not prohibited from treating differently two business forms—independent auto body shops on the one hand and insurance-company-owned auto body shops on the other); *Ford v. Texas Dep't of Transp.*, 264 F.3d 493, 502 (5th Cir. 2001) (statute prohibiting automobile manufacturers from acting as automobile dealers did not offend dormant Commerce Clause because it did not discriminate on basis of company's business contacts with state, but rather on basis of status as an automobile manufacturer). Defendant thus concludes Wal-Mart's Commerce Clause claim should be dismissed.

Wal-Mart does not disagree that the challenged provisions are facially neutral. Rather, Wal-Mart contends the provisions discriminate both by purpose and effect. Four factors are to be considered in determining whether purposeful discrimination underlies a state legislature's action:

> (1) whether a clear pattern of discrimination emerges from the effect of the state action; (2) the historical background of the decision, which may take into account any history of discrimination by the decisionmaking body; (3) the specific sequence of events leading up the challenged decision, including departures from normal procedures; and (4) the legislative or administrative history of the state action, including contemporary statements by decisionmakers.

*Allstate*, 495 F.3d at 160.

Wal-Mart asserts it has sufficiently met its burden at this stage of the litigation. Wal-Mart has alleged in its complaint: (1) Texas has a history of discrimination, as evidenced by its previous regulatory scheme which facially discriminated against out-of-state liquor retailers (Orig. Compl. ¶ 20); *Cooper*, 11 F.3d at 554 (holding Texas statute imposing residence requirement on applicant for permit to sell alcohol violated Commerce Clause); (2) adoption of the public corporation ban was in response to the decision in *Cooper* and intended to continue favoring Texas residents (Orig.

13

Compl. ¶¶ 21-23, quoting statements on Senate floor introducing bill and testimony in committee hearing); (3) the majority of, if not all, package store permit holders are Texans, Texas partnerships, and Texas (private and public) corporations (*Id*. ¶¶ 36-38); and (4) a grandfather clause allows Texas corporations to circumvent the public corporation ban. (*Id*. ¶¶ 24-25, 27). In addition, in responding to the motion to dismiss, Wal-Mart cites testimony in 2009 and 2013 hearings before a legislative committee considering repeal of the five-permit limit reiterating the reason for adoption of the limit was preferential treatment for Texas residents. (Resp. at 9-10 n.2 & 22-23).

Defendants attempt to dismiss Wal-Mart's allegations as simply "stray protectionist remarks of certain legislators [which] are insufficient to condemn this statute." *Allstate*, 495 F.3d at 161. Defendants also suggests the legislative record contains testimony proffering arguments opposing the challenged portions of the Code. But, for several reasons, neither argument is sufficient to defeat Wal-Mart's Commerce Clause claim at this early stage.

First, the "stray remarks" may also be characterized as "contemporary statements by decisionmakers" which the Fifth Circuit has specifically identified as factors to be considered. Second, the remarks are not the only facts alleged by Wal-Mart. Rather, Wal-Mart has alleged facts which suggest a historical background of discrimination as well as a resulting pattern of discrimination, both of which are also factors to be considered. The credibility and weight to give Wal-Mart's factual allegations is not a proper consideration at this time.[5]

Accordingly, the Court finds Wal-Mart has sufficiently alleged facts in support of a claim of a violation of the Commerce Clause. The motion to dismiss this claim is thus properly denied.

## C. Privileges and Immunities Clause

Defendants finally argue Plaintiffs cannot seek relief under the Privileges and Immunities

---

[5] The Court notes the district court in *Allstate* made its decision after conducting a bench trial.

Clause. Under that clause, "[t]he Citizens of each State [are] entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const., Art. IV, § 2, cl. 1. "The object of the Privileges and Immunities Clause" is to "'place the citizens of each State upon the same footing with citizens of other States." *Lunding v. New York Tax Appeals Tribunal*, 522 U.S. 287, 296 (1998). The clause not does not categorically prohibit distinctions based on state citizenship or residency, but does protect those privileges and immunities that are "fundamental." *McBurney v. Young*, 133 S. Ct. 1709, 1714-15 (2013).

Defendants move to dismiss this claim, arguing the clause does not apply to corporations. As Wal-Mart concedes, the Supreme Court long ago declined to apply the Privileges and Immunities Clause to corporations. *Hemphill v. Orloff*, 277 U.S. 537, 548–50 (1928). They point out, however, that decision is nearly a century old, and the Supreme Court's most recent reference to the rule is dicta in a decision which is itself thirty years old. *See Metropolitan Life Ins. Co. v. Ward*, 470 U.S. 869, 884 (1985) (noting litigants relied on Equal Protection Clause "because, as corporations, they are not 'citizens' protected by the Privileges and Immunities Clauses of the Constitution"). Wal-Mart contends the exclusion of corporations is ripe for reconsideration.

Recent Supreme Court precedent does suggest this issue may be ripe for reconsideration. *See Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014) (concluding statutory prohibition on government action which substantially burden "a person's exercise of religion applies to regulation governing activities of closely-held for-profit corporations); *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 365 (2010) (First Amendment prohibits government from suppressing political speech on basis of speaker's corporate identity). However, this Court is of course, bound by controlling precedent. *Alexander v. Express Energy Servs. Operating, L.P.*, 784 F.3d 1032, 1037 (5th Cir. 2015) (refusing to accept plaintiff's argument because court is "bound to follow clear and controlling Supreme Court precedent"); *Lopez v. Sentrillon Corp.*, 749 F.3d 347, 351 (5th Cir. 2014) (affirming district court's holding that it was bound by extant Supreme Court

15

precedent). Accordingly, the claim of a violation of the Privileges and Immunities Clause must be dismissed.

## IV.  CONCLUSION

Accordingly, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss Plaintiff's Original Complaint for Declaratory and Injunctive Relief (Clerk's Dkt. #11). Plaintiffs' claim of a violation of the Privileges and Immunities Clause is **DISMISSED**. All other relief requested is **DENIED**.

**SIGNED** on July 24, 2015.

ROBERT L. PITMAN
UNITED STATES DISTRICT JUDGE