IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| WAL-MART STORES, INC., WAL-MART STORES TEXAS, LLC, SAM'S EAST, INC., and QUALITY LICENSING CORP., | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 1:15-cv-00134-RP |
| TEXAS ALCOHOLIC BEVERAGE COMMISSION; JOSÉ CUEVAS, JR., in his official capacity as Presiding Officer of the Texas Alcoholic Beverage Commission; STEVEN M. WEINBERG, in his official Capacity as Commissioner of the Texas Alcoholic Beverage Commission; IDA CLEMENT STEEN, in her official Capacity as Commissioner of the Texas Alcoholic Beverage Commission, | § § § § § § § § § § § § | |
| Defendants. | § | |

**DEFENDANTS' ADVISORY REGARDING THIRD-PARTY DISCOVERY MOTIONS**

Currently pending before the Court are requests from four different third parties seeking to limit the scope of depositions requested by Wal-Mart pursuant to Rule 45.[1] Neither the third-party motions nor the underlying deposition subpoenas necessitate any action by, or seek any relief from, the Defendants in this proceeding. The briefing on these motions, however, raises serious questions about the appropriate scope of third-party discovery in a constitutional challenge to laws duly enacted by the legislative branch. Accordingly, Defendants file this advisory to address the implications of Wal-Mart's far-reaching discovery requests in this and future cases.

---

[1] *See* Twin Liquors, LP & David Jabour's Mot. to Quash & for Protection from Dep. Subpoenas & Mot. for Declassification of Pls.' Expert Reports (ECF No. 95) ("Twin Liquors Mot. to Quash"); Tex. Package Store Ass'n's Mot. to Modify Dep. Subpoena (ECF No. 96) ("TPSA Mot. to Modify"); Spec's Family Partners, Ltd.'s Mot. to Quash Some 30(b)(6) Dep. Topics (ECF No. 105) ("Spec's Mot. to Quash").

1

A.   **Relevant Background**

1.   The Context Surrounding the Third-Parties' Discovery Motions

This lawsuit is a constitutional challenge to Texas's long-standing liquor regulatory framework under the Equal Protection and dormant Commerce Clause.  As explained in greater detail in Defendants' Motion to Dismiss (ECF No. 11), Wal-Mart has brought a facial challenge to four statutory provisions central to the State's ability to regulate the overall number of package store permits—the only type of permit that authorizes the holder to sell liquor at the retail level in Texas.  *See* Mot. to Dismiss at 3-4; *see also* Compl. ¶¶ 51-71 (ECF No. 1).  Specifically, Wal-Mart challenges the constitutionality of:

- Section 22.04, enacted in 1935, which limits to five the number of package store permits in which any "person may hold or have an interest, directly or indirectly," TEX. ALCO. BEV. CODE ANN. § 22.04;

- Section 22.06(a)(2), also enacted in 1935, which, in relevant part, prohibits any person who "holds a package store permit or owns an interest in a package store" from having a "direct or indirect interest" in "a wine and beer retailer's, wine and beer retailer's off-premise, or mixed beverage permit," *id.* § 22.06(a)(2);

- Section 22.05, enacted in 1951, which allows for the consolidation of package store permits into a single legal entity "[i]f one person or two or more persons related within the first degree of consanguinity have a majority of the ownership in two or more legal entities holding package store permits," *id.* § 22.05; and

- Section 22.16, enacted in 1995, which provides that a package store permit cannot be "owned or held by a public corporation, or by any entity which is directly or indirectly owned or controlled, in whole or in part, by a public corporation," *id.* § 22.16(a), and defines a public corporation as any entity that is publicly-traded or in which more than 35 persons hold an ownership interest, *id.* § 22.16(b).

All four challenged provisions represent an integral part of Texas's regulatory framework governing retail liquor sales.  And all four have been subjected to numerous legislative challenges, including Wal-Mart's unsuccessful bid to repeal the provisions in 2015.  *See* Motion to Dismiss at 6-7 (listing repeal efforts, including those in 2009, 2013, and 2015).

2

### 2. Wal-Mart's Discovery Requests

It is primarily lobbying activities related to these unsuccessful repeal efforts that Wal-Mart seeks to discover. Specifically, Wal-Mart seeks deposition testimony from Twin Liquors, LP and David Jabour (collectively, "Twin Liquors"), the Texas Package Store Association ("TPSA"), and Spec's Family Partners, Ltd. ("Spec's")—all entities and individuals authorized to hold package store permits under the Texas Alcoholic Beverage Code—relating to any lobbying efforts connected to the failed repeal efforts. *See* Twin Liquors Mot. to Quash, Ex. A-1, Dep. Subpoena, Topic 11 (ECF No. 95-1) ("Twin Liquors Subpoena") (seeking deposition testimony, without any time restriction, regarding "*communications with any Texas government body* (including without limitation the Texas Legislature, members of the Legislature, legislative staff members, the Texas Alcoholic Beverage Commission ('TABC'), the Attorney General, and the Governor's office) relating to efforts to repeal or amend" the challenged provisions) (emphasis added); TPSA Mot. to Modify, Ex. A, Dep. Subpoena, Topic 9 (ECF No. 96-1) ("TPSA Subpoena") (same); Spec's Mot. to Quash, Ex. 1, Dep. Subpoena, Topic 12 (ECF No. 105-1) ("Spec's Subpoena") (same).

Wal-Mart also seeks deposition testimony on these third-parties' "communications with Texas state government officials . . . regarding . . . compliance with and enforcement of the challenged laws." Pls.' Opp'n to Twin Liquors Mot. to Quash at 2 (ECF No. 99); Pls.' Opp'n to TPSA Mot. to Modify at 2 (ECF No. 107); Pls.' Opp'n to Spec's Mot. to Quash at 2 (ECF No. 114). That is, Wal-Mart wants to solicit from the third parties their views on how the Code is enforced.

For the reasons set forth below, Wal-Mart should not be allowed to discover either category of information.

B.  **Post-Enactment Communications from Third-Party Lobbyists Are Irrelevant to Plaintiffs' Constitutional Challenge.**

According to Wal-Mart, it is seeking to discover post-enactment statements made by third-parties Twin Liquors, Spec's, and TPSA to the Legislature during the 2009, 2013, and 2015 sessions so that it may establish the "setting and history" of laws passed in 1935, 1951, and 1995. *E.g.*, Pls.' Opp'n to Twin Liquors Mot. to Quash at 2. This type of discovery directed at post-enactment statements, however, finds no support in the law.[2]

It is well-settled that statements made after the passage of a law are irrelevant to establishing the purpose of the legislature when enacting the law. *See*, *e.g.*, *Barber v. Thomas,* 560 U.S. 474, 485–86 (2010) ("[W]hatever interpretive force one attaches to legislative history, the Court normally gives little weight to statements, such as those of the individual legislators, made *after* the bill in question has become law."); *Rogers v. Frito-Lay, Inc.*, 611 F.2d 1074, 1080 (5th Cir. 1980) ("What happened after a statute was enacted may be history . . . but it is not part of the legislative history of the original enactment."); *see also Rothe Dev. Corp. v. Dep't of Def.*, 413 F.3d 1327, 1338 (Fed. Cir. 2005) ("[E]vidence post-dating the enactment of a statute could not be counted in determining the facial constitutionality of the statute . . . ."). Indeed, the Supreme Court has found "the postenactment elucidation of the meaning of a statute to be of little relevance in

---

[2] Neither *St. Joseph Abbey v. Castille*, 712 F.3d 215, 223 (5th Cir. 2013), nor *Allstate Ins. Co. v. Abbott*, 495 F.3d 151, 160 (5th Cir. 2007), the two cases cited by Wal-Mart in support of its request for post-enactment statements, considered discovery requests or addressed the relevance of post-enactment statements to a constitutional inquiry. In *St. Joseph Abbey*, the Fifth Circuit struck down a state law that effectively prohibited the monks of St. Joseph Abbey from continuing to make and sell caskets as they had done for years before the new legislation. There is no evidence in the lower court's record or the Fifth Circuit opinion that either court considered any evidence other than the law and the contemporaneous legislative record in reaching its conclusions. *St. Joseph Abbey*, 712 F.3d at 223 (examining the "setting and history of the challenged rule"). Similarly, in *Allstate*, the Fifth Circuit upheld a Texas statute against a dormant Commerce Clause attack, finding that the law did not discriminate against interstate commerce. In making this determination, the court considered the specific sequence of events "leading up" to the challenged decision and contemporary statements made by decision makers on the legislative record. *Allstate*, 495 F.3d at 160-61.

determining the intent of the legislature contemporaneous to the passage of the statute." *Edwards v. Aguillard*, 482 U.S. 578, 596 n.19 (1987); *see also Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 (1977) (noting the relevance of "*contemporary* statements by members of the decisionmaking body, minutes of its meetings, or reports" (emphasis added)). These principles hold particularly true in a case like this one, where the post-enactment statements regarding Sections 22.04, 22.05, and 22.06 would post-date the passage of these provisions by over fifty years. *See Lockhart v. United States*, 546 U.S. 142, 147 (2005) ("[F]ailed legislative proposals are a particularly dangerous ground on which to rest an interpretation of a prior statute." (alteration in original) (internal quotation marks omitted)).

What is more, Wal-Mart's discovery is directed at statements made by *third-party* lobbyists. These individuals cannot speak for the Legislature or bind it in any way, and their lobbying efforts have no bearing on whether the challenged provisions are constitutional. *See Allstate*, 495 F.3d at 160 (noting that the Supreme Court identified certain factors "as relevant in determining whether purposeful discrimination animated a state legislature's action," including "contemporary statements by decisionmakers" (citing *Vill. of Arlington Heights*, 429 U.S. at 266-68); *Phelps-Roper v. Heineman*, No. 4:09-CV-3268, 2014 WL 562843, at *2 (D. Neb. Feb. 11, 2014) ("[T]he analysis of legislative intent must be limited to the official legislative history, which does not include the opinions of a legislative clerk or outside advocates and lobbyists." (citations omitted)); *Alliance of Auto. Mfrs., Inc. v. Jones*, No 4:08-CV-555, 2013 WL 4838764, at *3-4 (N.D. Fla. Sept. 11, 2013) (finding no support for discovery of "the personal opinions of those lobbying for or against the law as to their understanding of the purposes or rationales for the law, . . . the extent of any lobbying efforts, [or] communications concerning that lobbying," because

the topics are irrelevant to "[q]uestions concerning the constitutionality of state law"). The Court should not permit Wal-Mart to discover post-enactment statements by third-party lobbyists.

Allowing Wal-Mart to depose the package stores on their post-enactment lobbying efforts so it may establish the "purpose" of Texas's laws through "circumstantial evidence" risks setting a dangerous precedent. *See* Pls.' Opp'n to Spec's Mot. to Quash at 3. Although at times a court may decide that fact discovery is appropriate in a constitutional challenge, the bounds of that discovery should not be expanded so broadly as to turn constitutional principles on their head. The relevant "setting and history" for any state law is to be found in the contemporaneous legislative record of that law's passage (and any relevant events leading up to its passage); post-enactment statements from third-party lobbyists do nothing to inform this consideration and should not be reached in discovery. *See* Twin Liquors Subpoena, Topics 10-11, 13-14; TPSA Subpoena, Topics 8-9, 11-12; Spec's Subpoena, Topics 11-12, 14-15. The Court should quash these topics.

### C. **Defendants Have Produced Extensive Discovery to "Demonstrate How the Challenged Laws Function in Practice."**

The Court also should reject Wal-Mart's efforts to secure deposition testimony regarding TABC's enforcement of certain challenged provisions. *See, e.g.*, Twin Liquors Subpoena, Topic 8 (requesting testimony on Twin Liquors' "communications with [TABC] relating to that agency's interpretation, application, and enforcement of Section 22.05 (the consanguinity consolidation procedure)"); TPSA Subpoena, Topic 6 (same); Spec's Subpoena, Topic 16 (same). Wal-Mart contends that it needs testimony of the third-parties' communications with TABC to "demonstrate how the challenged laws function in practice." *E.g.*, Pls.' Opp'n to Twin Liquors Mot. to Quash at 2.

Even if discovery about how the "challenged laws function" were relevant or admissible (a point that Defendants do not concede), much of the information sought through these third-party

6

depositions has been made available to Wal-Mart. *See Rembrandt Patent Innovations v. Apple, Inc.*, No. 1:15-CV-438-RP, 2015 WL 4393581, at *2 (W.D. Tex. July 15, 2015) (finding that Rule 45 subpoena was unduly burdensome unless requesting party could establish that the information sought could not be obtained from defendant); *see also Positive Black Talk Inc. v. Cash Money Records Inc.*, 394 F.3d 357, 377 (5th Cir. 2004) (balancing of Rule 45 subpoena's benefits and burdens requires consideration of "whether the information is necessary and unavailable from any other source" (citation and internal quotation marks omitted)), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010); *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed Cir. 1993) (finding district court did not abuse discretion by quashing third-party subpoena when the same information was available, but not first sought, from defendants).

Defendants have produced extensive written and deposition discovery in this case, searching electronic and physical files for over 28 custodians (including current and former TABC employees and commissioners) and at least 4 non-custodial sources over a 20-year period. Defendants have provided over 4,900 pages of materials in response to 27 requests for production, responded to 18 interrogatories and 6 requests for admission, and offered deposition testimony in connection with this lawsuit.[3] Among other materials, Defendants have produced hundreds of documents describing TABC's interpretation, application, and enforcement of Section 22.05—the same topic on which Wal-Mart seeks testimony from the third parties. *See, e.g.,* Twin Liquors Subpoena, Topic 8; TPSA Subpoena, Topic 6; Spec's Subpoena, Topic 16. Defendants also offered testimony on this topic through Amy Harrison, the Director of TABC's Licensing Division, who Wal-Mart deposed on April 7, and who is in a better position than any third party to describe the "*agency*'s interpretation, application, and enforcement of Section 22.05." *Id.* (emphasis added).

---

[3] Most of the discovery in this case has been produced with a confidentiality designation pursuant to the Court's Confidentiality and Protective Order (ECF No. 36).

Defendants also have offered written discovery and/or deposition testimony relating to the following topics identified in the third-party subpoenas:

- **Information regarding "holds" placed on certain Spec's package store permit applications** (Spec's Subpoena, Topics 5 and 6): Defendants have produced documents related to the "holds" identified in Spec's subpoena, have offered a copy of the agency's internal policy regarding "holds" (which are no more than internal administrative flags entered in TABC's system for myriad reasons), and offered deposition testimony through TABC's Licensing Director relating to the agency's processing and investigation of any protests pertaining to the identified "holds."

- **Testimony regarding requests to, and any response from, TABC for an attempted "bulk buy" by Spec's** (Spec's Subpoena, Topic 7): Defendants have produced responsive documents related to the specific transaction identified by Wal-Mart for this topic, and have offered the deposition testimony of TABC's Licensing Director regarding the "response from TABC" to this inquiry. Moreover, Defendants offered deposition testimony through their agency representative generally about the processing of "bulk buys" (as that term is used by Wal-Mart).

- **TABC's handling of protests against, and "change-of-location requests" by, Twin Liquors** (Twin Liquors Subpoena, Topics 5-6): Defendants have provided Wal-Mart with materials regarding these issues and have indicated that the matters raised in these topics did not involve any of the challenged provisions of the Code.

- **Communications between TABC and third parties regarding this lawsuit** (Twin Liquors Subpoena, Topic 12; TPSA Subpoena, Topic 10; Spec's Subpoena, Topic 13): Even if this topic were relevant to the constitutional issues before this Court, which Defendants do not concede, these requests mirror what Wal-Mart has already asked Defendants to provide. Defendants have produced responsive materials to Wal-Mart pursuant to that request.

Each of these topics reflects the far-ranging scope of information sought by Wal-Mart and calls into question Wal-Mart's need to secure this information from Twin Liquors, Spec's, and TPSA. Defendants submit that the requests must be considered alongside the discovery and deposition testimony already provided by Defendants in this case, and that they should be denied.

****

For the foregoing reasons, Defendants contend that there are serious issues regarding the appropriateness of Wal-Mart's deposition subpoenas to Twin Liquors, TPSA, and Spec's. They should be quashed to the extent requested by each of these third parties.

DATED: April 12, 2016

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

ANGELA V. COLMENERO
Chief, General Litigation Division

 */s/ Adam N. Bitter*
MARIA AMELIA CALAF
Attorney-in-Charge
State Bar No. 24081915
Telephone: (512) 475-4090
maria.calaf@texasattorneygeneral.gov
ADAM N. BITTER
Assistant Attorney General
State Bar No. 24085070
Telephone: (512) 475-4651
adam.bitter@texasattorneygeneral.gov
KELLI C. FUQUA
Assistant Attorney General
State Bar No. 24097713
Telephone: (512) 475-4058
kelli.fuqua@texasattorneygeneral.gov
General Litigation Division
P.O. Box 12548
Austin, Texas 78711-2548
Facsimile: (512) 320-0667

PATRICK K. SWEETEN
Senior Counsel for Civil Litigation
Office of the Texas Attorney General
State Bar No. 00798537
Telephone: (512) 463-4139
Facsimile: (512) 936-0545
patrick.sweeten@texasattorneygeneral.gov
***Counsel for Defendants***

**CERTIFICATE OF SERVICE**

   I hereby certify that on this 12th day of April, 2016, the foregoing *Defendants' Advisory Regarding Third-Party Discovery Motions* was electronically filed with the Clerk of the Court using the CM/ECF system and served on all attorney(s) and/or parties of record, via the CM/ECF service and/or via electronic mail.

         */s/ Adam N. Bitter*
         ADAM N. BITTER