## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **WAL-MART STORES, INC., et al.** | § | |
| | § | |
| **v.** | § | **A-15-CV-134-RP** |
| | § | |
| **TEXAS ALCOHOLIC BEVERAGE** | § | |
| **COMMISSION, et al.** | § | |

## <u>ORDER</u>

Before the Court are Plaintiff's Motion to Compel (Dkt. No. 180); responses from the third parties Western Beverages Liquors of Texas, Inc. (Dkt. No. 186); Twin Liquors LP (Dkt. No. 188); Spec's Family Partners, Ltd. (Dkt. No. 191); and Gabriel Holdings, LLC (Dkt. No. 192); and Spec's Motion to Quash Subpoena and Objections and Request for Fees (Dkt. No. 189). The District Court referred the above-motions to the undersigned Magistrate Judge for resolution pursuant to 28 U.S.C. §636(b)(1)(A), FED. R. CIV. P. 72, and Rule 1(c) of Appendix C of the Local Rules. The Court held a hearing on the motions on February 7, 2017.

## I. GENERAL BACKGROUND

Wal-mart and three of its subsidiaries challenge the constitutionality of TEX. ALCO. BEV. CODE §§ 22.04, 22.05, 22.06, and 22.16, contending that the statutes violate both the Equal Protection Clause and the Dormant Commerce Clause. The statutes regulate grants of permits to make retail sales of distilled spirits by limiting the number of permits a person may own and the types of companies which may own them. Plaintiffs argue that the ban on public corporations, as well as the consanguinity consolidation provision, are unconstitutional as they discriminate against out-of-state companies in both effect and purpose.

Wal-mart has subpoenaed records from four package store chains, requesting pricing information and sales volume data, as well as each store's permit consolidation applications submitted to the TABC.  After conferring with the package stores, Wal-mart agreed to narrow the requests, limiting the request for sales volume data and pricing information to ten commonly sold liquor products[1] for a three month period, and limiting its request for consolidation applications to a two year period.  With these limitations, only Gabriel's continued to object to producing pricing information, and only Western Beverages objected to producing the permit applications.  All four package stores, however, continue to object to producing their sales volume data, even as limited. Wal-mart therefore seeks to compel responses on these topics.

## II. ANALYSIS

### A.    Pricing

As noted, only Gabriel's has continued to object to providing the requested pricing data.  But Gabriel's failed to respond to Wal-mart's motion to compel, choosing instead to join the other package stores' responses.  As none of the other package stores objected to this request and Gabriel's did not submit an additional response, Gabriel's has failed to present a valid objection, and has offered no response to Wal-mart's motion.  Moreover, when asked at the hearing if Gabriel's would like to respond to the motion, counsel merely offered to provide additional briefing, but was unprepared to elaborate on its objection.  As such, Gabriel's has waived its objection and the Court

---

[1]The ten products are: (1) Smirnoff Red Label 1.75LT PET; (2) Absolut 1.75LT; (3) SKYY REG 1.75LT; (4) Bacardi Light 1.75LT; (5) Captain Morgan OSR 1.75LT; (6) Jack Daniels Black Label 1.75LT; (7) Jameson 750ML; (8) Crown Royal 750ML; (9) Bombay Sapphire Gin 750ML; and (10) Hennessy VS 750ML.  Dkt. No. 180 at 7.

**ORDERS** Gabriel's to produce pricing information for the ten products listed above for the period from June to August 2015.

B.      **Permit Applications**

Wal-mart's request to compel Western Beverages to produce its permit consolidation applications is now moot.  As addressed in a separate order, the Court has ordered TABC to produce the permit and consolidation applications from the ten largest package stores, which includes Western Beverages.  This request is therefore **DENIED AS MOOT**.

C.      **Sales Volume**

Wal-mart asks the Court to compel the package stores to produce sales volume data for the ten commonly sold liquor products listed above.  This request has been limited to a three month period, from June to August 2015.  The package stores object to producing this information on two bases: (1) it is irrelevant and would be overly burdensome to produce; and (2) the information sought is highly confidential.

On the question of the relevancy of the information, the Court finds that sales volume data are potentially relevant to rebut TABC's assertions about the rational basis for the statutes.  One of the articulated bases for the statute is that it was intended to reduce alcohol sales, by reducing the number of package store chains, based on the assumption that liquor sales will be lower if there are fewer large chains.  Wal-mart stated that one or more TABC experts has looked at what percentage of the total state package store permits issued are held by chains, and argued that because the chains hold only a small percentage of the whole, the statute has accomplished its goal.  Wal-mart asserted at the hearing that the sales volume data it requested was intended to respond to this argument, as it believes the sales volumes of the chain stores will be much higher than those of smaller stores, and

3

will prove that the market share (on a volume basis) of the chain stores is much higher than the chains' share of permits.  From this, Wal-mart intends to argue that the consolidation process actually *increases* the volume of liquor sold, as opposed to decreasing it.  As Wal-mart's attorney put it at the hearing, he believes the data is relevant to supporting the argument that one permit in the hands of a chain store does not equal  one permit in the hands of a single store owner when it comes to the quantity of liquor sold.  While there is logic to the argument, Wal-mart's contention was weakened by its inability to fully articulate how it would demonstrate its point without sales volume data from smaller package stores to compare against.  This fact reduces somewhat the potential relevance of the data.

The package stores argued that collecting sales volume data for each store they own for the ten products over the three month period would be very difficult and would result in a large collection of data, especially given confusion as to how the data should be produced—in daily, weekly, or monthly increments, and by store location or in the aggregate for all stores in a chain. Aside from Western Beverages, none of the package stores were able to provide any detail regarding the manner in which they retain this data, nor did any submit testimony to elaborate on the vague claims of burden each made.  However, after much wrangling with the Court, the package stores reluctantly agreed that it would be possible to produce aggregated sales figures for all stores for the three month period for each of the ten liquor products.  Wal-mart agreed that this would suffice for its purposes.  Therefore, weighing the burden on the non-parties to produce this limited information with the relevancy of the information to Wal-mart's claims, the Court finds that the relevancy of the information outweighs the burden on the package stores of producing it.

4

The package stores also argue that they should not be compelled to produce the data regardless of its potential relevance, as the records contain highly confidential trade secrets. Specs' counsel likened it to a "special sauce," and argued that Wal-mart was attempting to get the knowledge derived from decades worth of experience in the Texas liquor market through "a $40 subpoena." Dkt. No. 189 at 3. However, though all four package stores argued that the information is highly confidential and protected at the highest level, only Western Beverages has entered into written confidentiality agreements with its suppliers to protect their purchase information for the same products. Dkt. Nos. 202, 203, 205, & 207. This means that, other than Western Beverages, the package stores have voluntarily provided virtually the same information to a third party, with no requirement that the third party maintain its confidentiality. Moreover, when asked how the information is stored, only Western Beverages indicated that the information was centrally located and easily accessible to its owners. Indeed, Spec's counsel was unable to give any detailed response regarding the manner in which the data was stored, despite claiming that it would be incredibly burdensome to produce. He insisted, however, that it would involve having to gather the information from each individual store and then aggregate it, and this would be very time consuming. But this claim is at odds with the assertion that the data is incredibly important to managing inventory. If the claim of Spec's counsel is to be believed, its top management cannot easily access or analyze the very information they contend is so important to keep regular track of—information it contends is akin to Colonel Sanders' secret recipe. If the information is so important, then it would be kept in an easily accessible format. The fact that it is not so stored undermines greatly the claim that the data is so fundamentally important and commercially sensitive that the Court should refuse to compel the package stores to produce it.

5

Finally, the Court notes that TABC requested, and Wal-Mart has produced, even more detailed sales volume data than what is at issue here.  Further, as noted, the Court is only compelling the production of sales volume data in aggregate, over a three month period from nearly two years ago, which substantially lessens its importance as a trade secret.  The likelihood of such limited data providing Wal-mart—or any other potential competitor—a market advantage is minimal, at best.  Moreover, Wal-mart itself will not have access to the data, as the parties have agreed to a protective order in this case, and the package stores may designate the data as "Attorney's Eyes Only."  And the Court was not moved by the package stores' unsupported fear that even with a protective order the data could be leaked to Wal-mart or hacked into by third parties.  If this were a basis to quash a discovery request seeking sensitive documents, then no sensitive document could ever be ordered produced.  In fact, documents far more sensitive than those at issue here are produced every day in litigation, pursuant to protective orders.  There is no reason that cannot happen in this case as well.

## D.    Spec's Motion to Quash and Request for Fees

Lastly, in addition to filing its response to Plaintiffs' motion, Spec's filed a motion to quash.  The motion to quash raises identical arguments, and is merely a vehicle by which Spec's could attach its request for fees from Wal-mart—a request that is baseless.  It will be denied.

## III. ORDER

For the reasons set forth above,  Plaintiff's Motion to Compel (Dkt. No. 180) is **GRANTED** as follows:  (1) Gabriel's is **ORDERED** to produce pricing information for the ten products listed in footnote 1 for the period from June to August 2015; and (2) Spec's, Western Beverages, Twin Liquors, and Gabriel's are **ORDERED** to produce aggregate sales volume data for each of the ten liquor products listed in footnote 1 for the period from June to August 2015.  Further, Wal-mart's

6

Motion to Compel (Dkt. No. 180) as to Western Beverages' consolidation applications is **DENIED**

**AS MOOT**.  Finally, Spec's Motion to Quash and Request for Fees (Dkt. No. 189) is **DENIED**.

SIGNED this 16th day of March, 2017.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE

7